Filed 7/5/24  In re G.W. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re G.W., a Person Coming Under the Juvenile Court Law. | B331618 |
| | (Los Angeles County Super. Ct. No. 21CCJP01228A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| ZACHARY W., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Charles Q. Clay III, Judge.  Affirmed.

Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Stephen Watson, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

Alleged father, Zachary W. (Zachary), appeals from the juvenile court's orders denying his petition under Welfare and Institution Code section 388[1] and terminating parental rights over G.W. (born September 2017). He contends the court erred in denying his petition and failed to comply with the inquiry requirements under the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and related California statutes (§ 224 et seq.). We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND[2]**

**A.   Detention, Jurisdiction, and Disposition**

On March 16, 2021, the Los Angeles County Department of Children and Family Services (DCFS) filed a dependency petition on behalf of G.W. following various domestic violence incidents between mother (Myrna P.) and her former companion. In an attached form ICWA-010, DCFS reported mother "refused to cooperate with DCFS and refused to answer any questions" about the child's possible Indian ancestry.

---

[1]   Undesignated statutory references are to the Welfare and Institutions Code.

[2]   Our summary of the facts is limited to those needed to resolve the issues raised on appeal and to provide relevant context.

Mother attended the detention hearing on March 19, 2021. The court noted the completed parentage questionnaire in which mother identified Zachary as G.W.'s father. Mother submitted Zachary's approximate birth date and stated he was incarcerated in federal prison. Mother also submitted a form ICWA-020 indicating she had no known Indian ancestry. Mother did not know if Zachary had Indian heritage. The court found no reason to know G.W. was an Indian child. It held paternity findings in abeyance pending (1) receipt of the child's birth certificate to confirm Zachary was identified as his father;[3] and (2) notice to Zachary, which would permit him to seek presumed father status. The court ordered DCFS to conduct a due diligence search for Zachary.

On April 12, 2021, mother informed a DCFS investigator Zachary "never had a relationship" with G.W. and was incarcerated around the time the child was nine months old. According to mother, Zachary would remain in federal prison for 20 more years. Zachary had recently talked with mother over the phone, directing her to "do what is needed to get [G.W.] back" from DCFS.

On April 16, 2021, DCFS filed, and the court signed, a form order for prisoner's appearance (JV-450), allowing Zachary to appear at the detention hearing from United States Penitentiary Victorville (USP Victorville).[4] One week later, a DCFS investigator spoke with a counselor at USP Victorville. The

---

[3] No name appeared on G.W.'s birth certificate identifying a father.

[4] Zachary W. contends DCFS listed the wrong inmate register number on the JV-450 form.

counselor informed the investigator Zachary was refusing to talk about matters "regarding the case." The counselor also reported Zachary's expected release date was in May 2037.

On April 22, 2021, DCFS filed a proof of service of the notice of detention hearing. The proof of service indicated notice was sent to Zachary at a USP Victorville address via certified or registered mail,[5] and verified the petition and social worker's report was attached to the notice. The notice also listed Zachary's inmate register number.[6]

Zachary did not personally appear at the May 2021 detention hearing. An attorney with the Los Angeles Dependency Lawyers (LADL), appearing as a friend of the court, stated he "was tasked to reach out to [Zachary], and as of this morning had not been able to get in contact with him." The court found notice proper and sustained the petition under section 300, subdivisions (a) and (b)(1). The court continued the disposition hearing to locate Zachary.

On June 4, 2021, DCFS filed another proof of service at USP Victorville of the disposition hearing. The notice listed

---

[5]     In his appellate briefs, Zachary contends the notices were sent to the "general" address to another penitentiary in Victorville called the Federal Correctional Institution Victorville Medium II (FCI Victorville). (Citing FCI Victorville Medium II <https://www.bop.gov/locations/institutions/vvm> (last accessed June 5, 2024).) The general address listed on the website matches the address to both USP Victorville and FCI Victorville. The website for both facilities identified different P.O. Box addresses "to send correspondence and parcels to inmates" in custody.

[6]     The inmate register number listed on the notice matches the number listed in Zachary's 388 petition.

Zachary's inmate register number and indicated service was made by first-class mail.

At the disposition hearing, the court summarized the unsuccessful attempts by the LADL attorney and social workers to reach Zachary in custody. It further noted a statewide inmate search failed to reveal Zachary's whereabouts. The court found Zachary to be G.W.'s alleged father and held off ruling on disposition as to him individually. Regarding mother, the court declared G.W. a dependent, removed the child from her custody, and ordered mother visitation and reunification services.

On July 8, 2021, DCFS filed and the court signed another order for prisoner appearance for Zachary. The order listed Zachary's name, place of incarceration (USP Victorville), and inmate register number.[7]

In a last minute information for the court filed July 20, 2021, DCFS reported its efforts to mail Zachary notice of the continued disposition hearing. On July 7, 2021, an employee with USP Victorville told a DCFS investigator Zachary was no longer housed at the facility. The investigator inquired where Zachary was located, was told "the information remain[ed] confidential at this time," and was directed to the Federal Bureau of Prisons website for updates. As of July 19, 2021, Zachary's location was not updated.

On July 20, 2021, DCFS filed another proof of service for the continued disposition hearing. Notice was sent to the same

---

[7] The inmate register number did not match the number listed in Zachary's 388 petition.

USP Victorville address and inmate register number via certified mail with certified receipt requested.[8]

Zachary did not personally attend the continued disposition hearing on July 22, 2021.  With a LADL attorney "standing by" for Zachary, counsel for DCFS expressed doubt Zachary would be released from federal custody.  The court agreed, stating, "I haven't known the feds to ever turn their custodies over to the local sheriffs."  The court continued Zachary's disposition hearing.

In a last minute information for the court filed on August 10, 2021, DCFS reported it was again "unable to locate [Zachary's] current incarceration status at this time.  On [August 9, 2021, an investigator] searched the Bureau of Federal Prison and the results remain[ed] the same stating 'no longer in BOP custody, release date 05/26/37.'  [The] Los Angeles County Inmate Locator and California Inmate Locator did not yield any results."

The court held the continued disposition hearing for Zachary on August 12, 2021.  The court began by noting "the prison systems, whether it be federal or state, has [*sic*] been unable to tell us where [Zachary] is for us to bring him in or to give him notice to have an attorney contact him."  Counsel for DCFS requested the court rule on disposition, noting minor counsel's (and her law clerk's) attempts to contact the Federal Bureau of Prisons and DCFS's own efforts to do the same.  Despite efforts by all parties involved, the court continued the disposition hearing again.

---

[8]     The inmate register number matched the number in the 388 petition.

The court proceeded to disposition at a continued hearing on September 10, 2021, out of Zachary's presence. As before, the court discussed the steps taken to identify Zachary's whereabouts. The court discussed DCFS's recent discussion with "a supervisor of records, a federal office named Gomez, who confirmed that [Zachary] remains in custody. But due to a confidential matter [he] cannot be available for any type of outside contact, even with the dependency court orders."[9] The court also noted the prison's inability to release Zachary "for telephonic or in-person hearings to our court, and he will be unavailable for an unknown period of time." The court found notice to Zachary proper and found DCFS and LADL had done everything they could to make him available. Proceeding to disposition, the court bypassed Zachary's reunification services under section 361.5, subdivision (e).[10]

At the six-month review hearing in December 2021, the court found mother's compliance not substantial and continued her reunification services. Notice of the review hearing was sent to Zachary at the same USP Victorville mailing address and inmate register number.[11]

---

[9]     In a last information for the court filed September 7, 2021, DCFS reported an investigator had contacted USP Victorville and spoke with a supervisor of records, who confirmed a "confidential matter" rendered Zachary unavailable for an unknown period "for any type of outside contact, even with the dependency court orders."

[10]     Section 361.5, subdivision (e)(1) provides, inter alia, that if "the parent or guardian is incarcerated, . . . the court shall order reasonable services unless the court determines, by clear and convincing evidence, those services would be detrimental to the child."

[11]     The inmate register number matched the number listed in Zachary's 388 petition.

## B.    Permanency Planning

Mother's reunification services were terminated in September 2022.  On December 5, 2022, DCFS filed a declaration of due diligence to locate Zachary.  The declaration summarized its inquiry of 23 different sources to locate Zachary, including the Los Angeles County jail inmate locator and California State Prison and Parole Index.  DCFS asked maternal aunt (R.R.) and mother where Zachary was located, each claiming ignorance despite admitting they had spoken with him on the phone.[12]  Throughout the proceedings, mother refused to provide DCFS Zachary's whereabouts.

The court found DCFS's due diligence complete at a permanency planning hearing on January 23, 2023.  Nevertheless, the court ordered another statewide search and ordered mother and maternal aunt to provide any information on Zachary's whereabouts.

In a February 2023 status review report, DCFS reported it had engaged in ICWA inquiries of mother, maternal grandparents (A.R. and M.R.), and maternal aunt.  Every person interviewed denied having Indian ancestry.

On March 10, 2023, DCFS located Zachary at the Santa Ana Jail.  Prior to discovering this location, DCFS's attempts at obtaining information from the Bureau of Prisons were unsuccessful.  Two days after DCFS discovered Zachary's status at the Santa Ana Jail, a Bureau of Prisons agent informed DCFS

---

[12]    In a January 2023 status review report, DCFS noted that "almost every time" mother and maternal aunt visited with G.W., they contacted Zachary telephonically and allowed him to speak with the child.  Despite these actions, mother reported "on multiple occasions that she does not know where [Zachary] is presently located."

Zachary was "in transit per the records and that one should continue to check the website for updates."

DCFS also provided the court with Zachary's statewide criminal record. Zachary served prior prison sentences for carjacking (Pen. Code, § 215, subd. (a)) in 1996, attempted burglary (*id.*, §§ 664, 459) in 2010, and felon in possession of a firearm (*id.*, former § 12021, subd. (a)(1)) in 2002 and 2010.

Zachary made his initial appearance from custody at a progress report hearing on April 7, 2023. Counsel specially appeared for Zachary "to investigate prior notice." The court granted Zachary weekly telephonic or video visits with G.W.

## C. Termination of Parental Rights

The same day the court held a continued section 366.26 hearing on May 30, 2023, Zachary filed a section 388 petition to vacate all disposition findings and orders. Citing *Ansley v. Superior Court* (1986) 185 Cal.App.3d 477 (*Ansley*), Zachary argued his due process rights were violated by DCFS sending noncompliant notices of hearings.[13] Zachary argued the notices and proofs of service provided "no indication" he received notice of the hearings or was made aware of the proceedings, "thus violating his due process rights." The court appointed Zachary counsel and continued the matter for additional briefing.

In its written opposition, DCFS argued Zachary's sole reliance on *Ansley* was misplaced, as the facts of that case were

---

[13] Zachary's request attached 15 supporting exhibits in support. One exhibit contained a website printout of USP Victorville. The website provided a link of "[o]ther facilities at the Victorville Federal Correctional Complex," including FCI Victorville, which shares the same general address as USP Victorville.

9

readily distinguishable. In so arguing, DCFS discussed its various efforts to reach Zachary by telephone and send him notices of hearings at his place of incarceration. Assuming Zachary's due process rights were violated, DCFS argued he failed to establish prejudice by showing how the outcome in the proceedings would be different.

In August 2023, DCFS reported it was unsuccessful in reaching Zachary to make relevant ICWA inquiries.

At a hearing on September 11, 2023, the court denied Zachary's 388 petition and terminated parental rights. In so ruling, the court found DCFS engaged in diligent and reasonable efforts to reach Zachary in custody "beyond what the court required." Zachary filed a timely notice of appeal.

## DISCUSSION

### A.     Section 388 Petition

Zachary contends the juvenile court abused its discretion in denying his 388 petition because (1) DCFS did not exercise reasonable diligence in attempting to locate him; and (2) DCFS violated his rights to due process by mailing noncompliant notices of hearings. We disagree.

### 1.     *Governing Law and Standard of Review*

"'Notice is both a constitutional and statutory imperative. In juvenile dependency proceedings, due process requires parents be given notice that is reasonably calculated to advise them an action is pending and afford them an opportunity to defend.' (*In re Jasmine G.* (2005) 127 Cal.App.4th 1109, 1114.) 'The child welfare agency must act with diligence to locate a missing parent. [Citation.] Reasonable diligence denotes a thorough, systematic

10

investigation and an inquiry conducted in good faith. [Citation.] [¶] However, there is no due process violation when there has been a good faith attempt to provide notice to a parent who is transient and whose whereabouts are unknown for the majority of the proceedings. [Citations.]' (*In re Justice P.* (2004) 123 Cal.App.4th 181, 188 (*Justice P.*).) Thus, where a parent cannot be located notwithstanding a reasonable search effort, the failure to give actual notice will not render the proceedings invalid. (*In re Claudia S.* (2005) 131 Cal.App.4th 236, 247.)" (*In re J.H.* (2007) 158 Cal.App.4th 174, 182.)

"'[A]n alleged father's rights (and/or corresponding duties on the part of the state), fall into essentially four categories: (1) the right to notice of the proceedings and of certain hearings (see [ ] §§ 290.1, 290.2, 291, 294, subd. (a)(2)); (2) the right to notice of their rights as an alleged father and the steps necessary to elevate their status to that of a presumed father (see § 316.2, subd. (b)); (3) the court's corresponding duty to inquire into an individual's possible parentage through various extrinsic sources apart from the individual's own self-reporting (see § 316.2, subd. (a)); and (4) if the whereabouts of an alleged father are unknown, the state's constitutional duty to exercise reasonable diligence to find him, so that he may be given proper notice of the proceedings.' [Citation.]" (*In re A.K.* (2024) 99 Cal.App.5th 252, 264.)

Zachary invokes the second category of rights under section 316.2, which requires providing an alleged father "notice at his last and usual place of abode by certified mail return receipt requested alleging that he is or could be the father of the child. The notice shall state that the child is the subject of proceedings under Section 300 and that the proceedings could result in the

termination of parental rights and adoption of the child. Judicial Council form Paternity-Waiver of Rights (JV-505) shall be included with the notice." (§ 316.2, subd. (b).)

Section 388 permits any parent or other person having an interest in a child who is a dependent of the juvenile court to petition "for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court" on grounds of changed circumstances or new evidence. (§ 388, subd. (a).) A section 388 petitioner must "establish[ ] by a preponderance of the evidence that (1) new or changed circumstances exist, and (2) the proposed change would promote the best interest of the child. [Citation.]" (*In re S.J.* (2008) 167 Cal.App.4th 953, 959.) A parent may file a section 388 petition to raise a due process challenge based on inadequate notice. (*Justice P., supra,* 123 Cal.App.4th at p. 189; see *In re Alayah J.* (2017) 9 Cal.App.5th 469, 478 [section 388 provides due process while accommodating the child's right to stability and permanency].)

We generally review the denial of a section 388 petition for an abuse of discretion. (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1228.) The appropriate test is """whether the trial court exceeded the bounds of reason.""" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319.) The court's factual findings are reviewed for substantial evidence. (*In re J.M.* (2020) 50 Cal.App.5th 833, 846.)

2.    *Analysis*

Substantial evidence supports the juvenile court's finding DCFS acted with reasonable diligence in locating Zachary. When this case began in March 2021, mother was asked about G.W.'s father. Mother identified Zachary, provided his approximate

12

birth date, and reported his custodial status in federal prison. Several weeks later, DCFS located Zachary at USP Victorville. An investigator called the facility to speak with Zachary but was refused contact, as Zachary declined to speak "regarding the case."

Notwithstanding Zachary's refusal to participate, DCFS mailed him notices of the proceedings at the USP Victorville address and filed form orders for his appearance from prison. In July 2021, DCFS was informed Zachary was no longer housed at USP Victorville. An investigator inquired into his whereabouts and was told the information was confidential. When the website to which DCFS was directed failed to update Zachary's location, investigators searched local and state inmate locators and contacted a federal supervisor of records. The supervisor acknowledged Zachary's custodial status but stated he was unable to appear for court (telephonically or in-person) "for an unknown period of time."

These efforts, and more, were summarized in DCFS's due diligence report.[14] They support the juvenile court's finding DCFS engaged in reasonable and diligent efforts to locate Zachary. They also readily distinguish this case from the cases on which Zachary purports to rely. (See *Ansley*, *supra*, 185 Cal.App.3d at p. 481 ["There is no evidence on the record that the Department made any attempt to serve petitioner with notice of

---

[14] The parties' appellate briefs further reveal the issues attempting to locate Zachary in federal custody. When discussing his incarceration, Zachary avers he was incarcerated at FCI Victorville. The respondent's brief adopts Zachary's factual background, and it too refers to his incarceration at FCI Victorville. Zachary was housed at USP Victorville, not FCI Victorville.

13

the proceedings"]; *In re Daniel F.* (2021) 64 Cal.App.5th 701, 715–716 ["Father made a prima facie showing that the Agency made little to no effort to give him notice until it was poised to terminate parental rights"].)

Notwithstanding this conclusion, we agree with Zachary's second contention that DCFS provided him inadequate notices under section 316.2. (But see *In re Daniel S.* (2004) 115 Cal.App.4th 903, 910 [excusing compliance with procedural statute when it is impracticable, impossible, or futile to comply].) Zachary was sent three notices at the USP Victorville address for the detention hearing, the original disposition hearing, and the continued disposition hearing, respectively. All three notices properly indicated G.W. was subject to proceedings under section 300 in which termination of parental rights and adoption was possible. (§ 316.2, subd. (b).) However, only the third notice verified mailing by certified mail return receipt requested; the first and second notices did not. Further, it does not appear that DCFS attached Judicial Council form JV-505 to any of the notices. (*Ibid.*)

As Zachary concedes, however, our analysis does not end upon a finding of error. "'We typically apply a harmless-error analysis when a statutory mandate is disobeyed, except in a narrow category of circumstances when we deem the error reversible per se. This practice derives from article VI, section 13 of the California Constitution, which provides: "No judgment shall be set aside, or new trial granted, in any cause . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a

14

miscarriage of justice.'" [Citation.]" (*In re Kobe A.* (2007) 146 Cal.App.4th 1113, 1122 (*Kobe A.*).)

Applying that standard here, we deem the error in sending noncompliant notices harmless. Assuming Zachary received statutorily compliant notice, he would not have been able to show he was entitled to reunification services. He took no action to prove a biological connection with G.W. He did not file a declaration of paternity at or after the time of Zachary's birth. (Fam. Code, §§ 7571, subd. (a); 7551.) Nor did he meet the standards for declaring him a presumed father. (See *id.*, § 7611.) Zachary adduced no evidence of marriage to mother (*id.*, § 7661, subds. (a)-(c)), receiving G.W. into his home, or openly holding out the child as his own (*id.*, § 7661, subd. (d)). Because Zachary did not demonstrate he was the biological or presumed father of G.W., he was not entitled to reunification services. (*Kobe A.*, *supra*, 146 Cal.App.4th at p. 1120; see § 361.5, subd. (a) [permitting reunification services to biological father "[u]pon a finding and declaration of paternity" and where services "will benefit the child"].)

Even if Zachary had shown he was a biological or presumed father, his criminal history left the juvenile court with limited discretion to provide him with reunification services. Section 361.5 provides reunification services need not be provided to a parent who "has been convicted of a violent felony, as defined in subdivision (c) of Section 6675.5 of the Penal Code," unless there is a finding that reunification would be in the best interests of the child. (§ 361.5, subd. (b)(12).) Beyond the conviction for which Zachary was (and is currently) serving in federal prison, he was convicted of carjacking (Pen. Code, § 215, subd. (a)), which is listed in section 667.5 of the Penal Code. (§ 667.5, subd. (c)(17).)

We discern no factual basis on which the juvenile court could find reunification with Zachary was in G.W.'s best interests.  (§ 361.5, subd. (e).)  It is undisputed Zachary was incarcerated shortly after G.W.'s birth and is not scheduled for release until May 2037, well after the maximum 18-month reunification period, and after G.W. attains the age of majority.  (See § 361.5, subd. (a).)  Zachary's custodial status prevented and continues to prevent him from providing a home for G.W.  (See *Dawn D. v. Superior Court* (1998) 17 Cal.4th 932, 937 [declining to recognize constructive receipt of child into incarcerated parent's home].)  Zachary identified no evidence to rebut mother's report he "never had a relationship" with G.W. prior to his incarceration either.

On the contrary, the facts strongly suggest Zachary refused to participate in the case despite having actual notice of the proceedings.  As of April 2021, Zachary knew about the case and mother's desire to "get G.W. back" from DCFS.  Despite this knowledge and having some contact with G.W., he refused to speak with DCFS about the case and did not appear before termination of reunification services.  As such, we "conclude that the failure to give him the specific notice required by section 361.2 did not affect the ultimate outcome of the dependency proceedings."  (*Kobe A.*, *supra*, 146 Cal.App.4th at p. 1124.)

## B.    Failure to Inquire of Indian Ancestry of Alleged Father

Finally, Zachary contends DCFS violated its duties to inquire of him and his family about their possible Indian lineage.  DCFS contends it was not dutybound to inquire of individuals

16

who do not meet the definition of "parent" under relevant law. We agree.

ICWA defines "parent" as "any biological parent or parents of an Indian child or any Indian person who has lawfully adopted an Indian child, including adoptions under tribal law or custom. It does not include the unwed father where paternity has not been acknowledged or established." (25 U.S.C. § 1903(9); *In re C.A.* (2018) 24 Cal.App.5th 511, 520 [definition of parent does not include an unwed father where paternity has not been acknowledged or established]; *In re E.G.* (2009) 170 Cal.App.4th 1530, 1533 ["absent a biological connection, the child cannot claim Indian heritage through the alleged father"].)

The limited definition of "parent" under ICWA has caused courts of this jurisdiction to resolve the issue under state law. "[I]n California an alleged father may acknowledge or establish paternity by voluntarily signing a declaration of paternity at the time of the child's birth, for filing with the birth certificate (Fam. Code, § 7571, subd. (a)), or through blood testing (Fam. Code, § 7551)." (*In re Daniel M.* (2003) 110 Cal.App.4th 703, 708–709; see e.g., *In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1166 & fn. 5 [ICWA inquiry and notice requirements triggered where minor's birth certificate designated father as the biological father].) Section 316.2 provides additional facts a dependency court may consider in determining that a man should be considered a "presumed" father, rather than an alleged father. (See § 316.2, subd. (a) [listing factors such as a man's cohabitation with child's mother at the time of conception or

17

birth, or a man's payment or promises of support with respect to the child].)

Zachary meets none of these standards. As we have discussed, Zachary did not establish a basis to qualify for biological or presumed father status. Beyond having limited telephonic contact with G.W. during his incarceration, he had no relationship with the child and took no action to assert his paternity despite having knowledge of the proceedings as early as April 2021. Because Zachary was an alleged father who had not taken the steps to acknowledge or establish his paternity, DCFS had no duty to inquire of him or his family on possible Indian ancestry.

## DISPOSITION

The orders denying the section 388 petition and terminating parental rights are affirmed.

MORI, J.

We concur:

CURREY, P. J.

ZUKIN, J.

18